IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BLUE RHINO GLOBAL SOURCING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV581 |
| | ) | |
| SANXIN INTERNATIONAL LTD. f/k/a | ) | |
| SUMXING INTERNATIONAL LTD., | ) | |
| BAZHOU SANXIN STEEL PIPE CO., | ) | |
| LTD., and CARLOS E. RODRIGUEZ | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action on June 6, 2016, alleging patent infringement under 35 U.S.C. § 1. (ECF No. 1.) Before the Court are motions to dismiss filed by Defendants, Sanxin International Ltd. ("SI") and Carlos E. Rodriguez ("Rodriguez") (collectively "Defendants"), for lack of personal jurisdiction and failure to state a claim, (ECF Nos. 15, 17). Also before the Court is Defendants' Motion to Amend their motions to dismiss, ("Motion to Amend"), (ECF No. 22). For the reasons set forth below, Defendant Sanxin International Ltd.'s Motion to Dismiss First Amended Complaint will be granted; Defendant Carlos E. Rodriguez's Motion to Dismiss First Amended Complaint will be granted; and Defendants' Motion to Amend will be denied as moot.

**I. BACKGROUND**

Plaintiff, Blue Rhino Global Sourcing, Inc. ("Blue Rhino"), describes itself as "a leading distributor of grills and other outdoor living accessories" in the United States. (ECF No. 10

¶ 14.) Blue Rhino is the assignee of United States Design Patent No. D680,795 ("the '795 Patent"), entitled "Barbecue Grill," issued by the United States Patent & Trademark Office on April 30, 2013. (*Id.* ¶¶ 15, 16; *see* ECF No. 10-1.)

None of the Defendants in this action are residents of North Carolina. Rodriguez is a resident of Minnesota and serves as President and a director of Defendant, SI. (*Id.* ¶ 4; ECF No. 16-1 ¶ 1.) SI, formerly known as Sumxing International, Ltd.,[1] is a Delaware corporation with its principal place of business in Cottage Grove, Minnesota. (ECF No. 10 ¶ 2; ECF No. 16-1 ¶ 2.) SI does not have any offices or employees in North Carolina, and it does not lease or own any property in the state. (ECF No. 16-1 ¶ 4.) In the Spring of 2016, SI was purchased by Defendant, Bazhou Sanxin Steel Pipe Co., Ltd. ("Bazhou Sanxin"), a Chinese corporation "engaged in the business of making, importing, marketing, offering for sale, and selling, a variety of outdoor living accessories, including grills." (ECF No. 10 ¶¶ 3, 18; ECF No. 16-1 ¶ 3.)

SI's business includes: (1) serving as a customer service contact for certain products manufactured by Bazhou Sanxin, (*id.* ¶ 7); and (2) serving "as a sales representative in the [United States] for Bazhou Sanxin," (*id.* ¶ 8). As a customer service contact, SI fields "post-purchase inquiries" from individual purchasers of Bazhou Sanxin products, as well as inquiries from retail stores that carry Bazhou Sanxin products. (*Id.* ¶ 7.) One such product is a 17.5 inch Square Charcoal Grill ("Charcoal Grill"), bearing model number BY16-102-002-02,

---

[1] SI formally changed its name from Sumxing International, Ltd. to Sanxin International, Ltd. on March 15, 2016. (ECF No. 16-1 ¶ 3; ECF No. 16-1 at 14.)

which, according to the Complaint,[2] infringes on Plaintiff's patent. (ECF No. 10 ¶¶ 26, 27, 30; ECF No. 16-1 ¶¶ 5, 9.) The Charcoal Grill is only sold through Walmart,[3] and although SI "does not market, manufacture, sell or offer to sell" this (or any other) grill, (ECF No. 16-1 ¶¶ 6, 15), it "serves as a customer service contact when purchasers of the [Charcoal Grill], or a retail store carrying the [grill], have missing or damaged parts or questions regarding the grill," (ECF No. 16-1 ¶ 9). SI's email address and telephone number are included in the Owner's Manual provided in each box containing the unassembled Charcoal Grill. (ECF No. 10-2 at 12; ECF No. 16-1 ¶ 9.)

SI does not initiate contact with customers or retailers of the Charcoal Grill. (*See* ECF No. 16-1 ¶¶ 9–10, 15.) It "is only involved with providing replacement parts after a grill has been purchased and it is discovered to inadvertently have been supplied with missing or damaged parts." (*Id.* ¶ 31.) As such, SI "has never shipped an entire grill" to North Carolina or any other state in response to a customer inquiry. (*Id.* ¶ 30.)

When a customer or retail store contacts SI to request replacement parts for a Bazhou Sanxin product, including the Charcoal Grill, SI sends the requested parts at no cost to the customer or retailer. (*See id.* ¶¶ 9, 10, 14.) SI then invoices Bazhou Sanxin for the shipping costs incurred. (*Id.* ¶ 11.) Between March 2014[4] and October 10, 2016, SI fielded 131

---

[2] Plaintiff filed its First Amended Complaint for Patent Infringement on September 6, 2016. (ECF No. 10.) All references to "the Complaint" herein refers to the First Amended Complaint.

[3] According to Rodriguez's Affidavit, the Charcoal Grill is also offered for sale on websites by sellers who would have originally purchased the grill from Walmart and then "attempt[ed] to re-sell the grill for a higher price." (ECF No. 16-1 ¶¶ 9, 23; ECF No. 10-4 at 7.)

[4] SI began receiving post-purchase inquiries from individuals and retail stores in March 2014. (ECF No. 16-1 ¶ 12.)

3

customer service inquiries from individuals and retail stores in North Carolina; 24 of those inquiries involved the Charcoal Grill, and the remaining 107 of those inquiries involved other Bazhou Sanxin products. (*Id.* ¶¶ 12–13, 20–24.) Rodriguez, who handled "approximately ten percent" of the post-purchase inquiries, recalls having "shipped a replacement part for [the Charcoal Grill] to North Carolina only one time." (ECF No. 18-1 ¶ 24.)

The other aspect of SI's business—*i.e.*, its sales representative services—is "limited to specific products and specific retailers in North America." (ECF No. 16-1 ¶ 8.) This "does not, and never has," included serving as a sales representative for the Charcoal Grill. (*Id.* ¶¶ 8, 9, 15.) SI has made no sales in North Carolina, nor has it ever offered for sale, or sold, products via online marketplaces such as Amazon or eBay. (*Id.* ¶¶ 23, 25.) SI does not provide any sales representative services to Walmart, the sole retailer of the allegedly infringing grills. (*Id.* ¶ 15.) In or around 2013 and 2014, SI attempted to have two North Carolina retailers— Family Dollar and Lowe's Companies, Inc. ("Lowe's")—carry Bazhou Sanxin products, none of which included the Charcoal Grill. (*Id.* ¶¶ 19–20.) Ultimately, neither Family Dollar nor Lowe's elected to carry any Bazhou Sanxin products. (*Id.*)

The instant lawsuit arises from Blue Rhino's allegations that the Charcoal Grill infringes the '795 Patent. Defendants have each moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim. (ECF Nos. 15, 17.) Defendants have also filed a Motion to Amend their motions to dismiss. (ECF No. 22.) To date, Defendant Bazhou Sanxin has not made an appearance in this case.

## II.     DEFENDANTS' MOTIONS TO DISMISS

Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 15 at 1; ECF No. 17 at 1.)  The Court must first address the threshold issue of personal jurisdiction.  *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006) (explaining that "dismissal of a case on an issue relating to the merits of the dispute, such as failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction" (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999))).

### A.     **Personal Jurisdiction**

When evaluating personal jurisdiction in patent cases, courts apply Federal Circuit law "because the jurisdictional question at issue . . . is 'intimately involved with the substance of the patent laws.'"  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).  On a personal jurisdiction challenge, the plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  However, where, as here, the court decides a pretrial personal jurisdiction motion without jurisdictional discovery or an evidentiary hearing—relying instead on "affidavits and other written materials" in the record—the plaintiff need only make a prima facie showing of personal jurisdiction. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  When considering whether the plaintiff has made such a showing, the court "must accept the *uncontroverted* allegations in the plaintiff's complaint as true and resolve any factual conflicts . . . in the plaintiff's favor."

*Id.* (emphasis added). *See Akro Corp.*, 45 F.3d at 1543 (stating "where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction" (quotation omitted)). "Once the defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." *Syngenta Crop Protection, LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 728 (M.D.N.C. 2015).

A federal district court can exercise personal jurisdiction over a non-resident defendant only if: (1) such jurisdiction is proper under the long-arm statute of the state in which the district court sits; and (2) exercising jurisdiction over the non-resident defendant in the forum state is consistent with the Due Process Clause of the Fourteenth Amendment. *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016). North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). *See* N.C. Gen. Stat. § 1-75.4(1)(d); *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977) ("[I]t is apparent that the [North Carolina] General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). Therefore, when North Carolina is the forum state, the two-prong test "collapse[s] into a single inquiry" allowing the court to proceed directly to the constitutional analysis. *See Inamed*, 249 F.3d at 1360; *accord Universal Leather*, 773 F.3d at 558–59.

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (per curiam). General jurisdiction, "permits a court to assert jurisdiction over a defendant based

on a forum connection unrelated to the underlying suit . . . ." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014). Courts can exercise general jurisdiction over a non-resident defendant when the defendant is essentially at home in the forum state, and "maintains contacts with the forum state that are sufficiently 'continuous and systematic,' even when the cause of action has no relation to those contacts." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (explaining that a court can exercise general jurisdiction over a non-resident defendant only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alteration in original))). "[S]poradic and insubstantial contact" with the forum state is insufficient to confer general jurisdiction. *Grober*, 686 F.3d at 1346.

"Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). The Federal Circuit has "outlined a three-prong minimum contacts test for determining if specific jurisdiction exist[s]: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998). "The 'minimum contacts' test examines the number and nature of a defendant's contacts with the forum." *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see Red Wing Shoe Co.*, 148 F.3d at 1359. Thus, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp.*, 471 U.S. at 475). In actions involving corporate employees, because a corporation is a separate and distinct legal entity from its officers and directors, corporate employees "are not subject to personal jurisdiction, even as to the employee's corporate activities unless the employee has sufficient minimum contacts with the forum." *May Apparel Grp., Inc. v. Ava Import-Export, Inc.*, 902 F. Supp. 93, 97 (M.D.N.C. 1995).

The plaintiff has the burden of proving the first two prongs of the minimum contacts test, and then the burden shifts to the defendant to prove that the assertion of personal jurisdiction is unreasonable. *Grober*, 686 F.3d at 1346. Only if the court finds that the plaintiff has satisfied the first prong of the analysis—that the defendant has purposefully directed his activities to the forum state—does the court need to consider the remaining prongs of the specific jurisdiction test. *See 3D Sys.*, 160 F.3d at 1380.

### B. Analysis

#### 1. General Jurisdiction

Plaintiff alleges that "Defendants have had continuous and systematic contacts with this State and District." (ECF No. 10 ¶ 9.) However, the evidence before the Court shows that neither SI nor Rodriguez have had such continuous and systematic contacts with North Carolina that render them essentially at home in the state. *See Goodyear*, 564 U.S. at 919.

8

Specifically, neither Defendant is a resident of North Carolina. SI is incorporated in Delaware, with its principal place of business in Minnesota. (ECF No. 10 ¶ 2; ECF No. 16-1 ¶ 2.) SI maintains no offices, operations, or employees in North Carolina. (ECF No. 16-1 ¶ 4.) Nor does SI own or lease any property in North Carolina. (*Id.*) Similarly, Rodriguez is a resident of Minnesota, not North Carolina, and neither owns nor rents any property in this state. (ECF No. 18-1 ¶¶ 1–3; ECF No. 10 ¶ 4.) Rodriguez does not vote in North Carolina; nor does he maintain a bank account, telephone listing, or mailing address within the state. (ECF No. 18-1 ¶ 4.)

Beyond Plaintiff's conclusory allegations alluding to general jurisdiction, Plaintiff offers no evidence to establish general jurisdiction. *See Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp. 2d 585, 594 (M.D.N.C. 2008) (explaining that when a defendant has presented evidence denying facts necessary to confer jurisdiction, the plaintiff "must present sufficient evidence to create a factual dispute on each jurisdictional element . . . on which the defendant has presented evidence"). The Court, therefore, concludes that it lacks general jurisdiction over Defendants SI and Rodriguez.

### 2. *Specific Jurisdiction*

Courts have found the first prong of the minimum contacts test—the purposeful direction prong—satisfied in instances where the defendant deliberately engaged in significant activities within the forum state, thereby availing itself of the privilege of conducting business in the state. *Burger King Corp.*, 471 U.S. at 475–76. *See, e.g., Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231–33 (Fed. Cir. 2010) (finding that defendant purposefully directed its activities at the forum state where, among other things, defendant received royalty

payments from the sale of the allegedly infringing products in the forum state and distributed the allegedly infringing product to an entity located in the forum state); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297–98 (Fed. Cir. 2009) (finding that defendant purposefully directed its activities when its agents traveled into the forum state with the allegedly infringing products, and displayed those products at a trade show attended by forum residents); *Taltwell, LLC v. Zonet USA Corp.*, No. 3:07cv543, 2007 WL 4562874, at *8 (E.D. Va. Dec. 20, 2007) (concluding that a non-resident corporate defendant party has purposefully directed its activities at the forum state, "if it enters into a business arrangement with a resident of the forum state whereby the [non-resident defendant] delivers goods or services to [the] forum state and receives payments therefrom").

Here, Plaintiff argues that "[t]he uncontroverted allegations establish that [SI] purposefully directed its activities at North Carolina." (ECF No. 19 at 8.) In particular, Plaintiff contends that SI "has engaged in substantial activity within North Carolina by availing itself as the Customer Service Department [of Bazhou Sanxin] and inviting contact from, as well as providing extensive customer service and post-sales support services to, customers residing in North Carolina." (*Id.*) Plaintiff points to the Owner's Manual included with each Charcoal Grill and alleges that SI "created the Owner's Manual[,] . . . identifying itself as the 'Customer Service Department.'" (*Id.*)

Contrary to Plaintiff's argument, however, SI has presented evidence disputing Plaintiff's allegations that it purposefully directed activities at North Carolina. (*See generally* ECF No. 16-1.) The record reflects that SI does not advertise or market its services to North Carolina customers. (ECF No. 16-1 ¶¶ 6, 21.) SI also has not attended trade shows in the

10

state, nor does it manufacture, import, or sell any products, including the allegedly infringing Charcoal Grills, to customers in North Carolina or elsewhere. (ECF No. 16-1 ¶¶ 6, 21, 25.) Additionally, while the Owner's Manual for the grill includes SI's phone number and email address as a customer service contact, SI plays no role in the creation, printing, publishing, shipping, or distribution of the manuals. (ECF No. 10-2 at 12; ECF No. 21-1 ¶¶ 2–5.) SI also has no control over where, or to whom, the grills are sold and shipped. (*See* ECF No. 16-1 ¶ 6.) The Charcoal Grills are sold and shipped, with the accompanying manuals, by Bazhou Sanxin to customers and retailers who, themselves, initiate contact with SI should they "need help, have missing or damaged parts, or have any questions" regarding the grill. (ECF No. 10-2 at 12; ECF No. 16-1 ¶ 9.)

While a non-resident defendant's shipment of an accused product into the forum state is usually sufficient to establish specific jurisdiction over the defendant, *see Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994), here, SI has never shipped the allegedly infringing Charcoal Grill to a customer in North Carolina, (ECF No. 16-1 ¶ 30). In response to post-purchase requests from individual customers and Walmart, the grill's retailer, SI ships only replacement parts[5] for damaged or missing components of the grill. (*Id.* ¶¶ 9–11, 30.) SI "has never shipped an entire grill" to a customer in North Carolina or elsewhere. (*Id.* ¶ 30.) Nor has SI received payment from the customer or retailer (*i.e.*, Walmart) for any

---

[5] The replacement parts provided by SI to Walmart and customers of the Charcoal Grill include hardware items such as "screws, cotter pins, wing nuts, and washers," as well as "handles, hinges, leg support cups, air vents, wheels and locks." (ECF No. 16-1 ¶¶ 28–29.) These items are "stock components" that are used on grills other than the Charcoal Grill at issue, as well as other types of products. (*Id.*)

costs associated with shipment of the requested replacement parts. (*See id.* ¶¶ 11, 14.) SI, instead, invoices Bazhou Sanxin for its shipping costs. (*Id.* ¶ 11.)

Plaintiff has failed to come forward with affidavits or other evidence to support its position and, in light of SI's evidence, Plaintiff's bare allegations, without more, are insufficient to show that SI purposefully directed its activities at the state of North Carolina. *See Syngenta Crop Protection*, 139 F. Supp. 3d at 728 ("Once the defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position."). Because Plaintiff has failed to meet its burden as to this first prong of the minimum contacts test for specific jurisdiction, the Court need not proceed to the second and third prongs. *See 3D Sys.*, 160 F.3d at 1380 (explaining that where the court finds that defendant did not purposefully direct any activities at residents of the forum state, the court need not examine the other two prongs); *accord Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Accordingly, the Court concludes that it lacks specific jurisdiction over SI.

The Court likewise finds that Plaintiff has failed to show that Defendant, Rodriguez, purposefully directed his activities at North Carolina. Plaintiff argues that Rodriguez "personally participated" in SI's activities by: (i) creating the Owner's Manual provided with each Charcoal Grill; (ii) working with various retailers, "including initiating contact, discussing potential sales, and attending business meetings, including with retailers in North Carolina;" and (iii) "personally fielding customer service inquiries, and sending Charcoal Grill parts to

customers residing in North Carolina." (ECF No. 19 at 14.) However, beyond its allegations and contentions, Plaintiff provides no affidavits or other evidence to meet its burden of establishing that Rodriguez purposefully directed his activities at North Carolina. Rather, the evidence reflects that despite Plaintiff's contention, Rodriguez played no role in the creating, printing, or publishing of the Owner's Manuals placed in each box containing a Charcoal Grill. (ECF No. 21-1 ¶¶ 2–3.) Nor did Rodriguez place the Owner's Manuals in boxes containing the Charcoal Grills. (*Id.* ¶ 4.) Additionally, while Rodriguez contacted various retailers "in an effort to have those retailers purchase products manufactured by Bazhou Sanxin," none of those contacts involved potential sales of the allegedly infringing Charcoal Grill. (ECF No. 16-1 ¶¶ 15, 16.) Further, Rodriguez's only attempts to secure business in North Carolina, on behalf of SI, were unsuccessful, and involved brief, sporadic contacts with Family Dollar and Lowe's. (*See id.* ¶¶ 19–20.) Specifically, he had "approximately three" email exchanges, in or around 2014, with a Family Dollar employee in North Carolina who, in turn, placed Rodriguez in contact with a company representative overseas. (ECF No. 16-1 ¶ 19.) He also made "three or four visits to North Carolina" since October 2013, and contacted "different buyers at Lowe's over the years," via emails and telephone calls, to arrange those meetings. (ECF No. 18-1 ¶ 29.) With respect to Rodriguez's role in fielding customer service inquiries regarding replacement parts for Bazhou Sanxin products, Rodriguez handled "approximately ten percent" of the post-purchase inquiries, and recalls only one occasion on which he actually shipped a replacement part for the Charcoal Grill to North Carolina. (ECF No. 18-1 ¶ 24.) Such attenuated contacts with North Carolina fall far short of demonstrating that Rodriguez purposefully directed his actions at North Carolina. *See Walden*, 134 S. Ct. at 1123.

Based on the above evidence, the Court concludes that Plaintiff has failed to establish that Rodriguez purposefully directed his activities at North Carolina. Thus, the Court lacks specific jurisdiction over Rodriguez.[6]

## III. CONCLUSION

The Court concludes that Plaintiff has failed to make a prima facie showing of either general or specific jurisdiction over Defendants SI and Rodriguez. Accordingly, the claims against Defendants SI and Rodriguez in Plaintiff's First Amended Complaint must be dismissed for lack of personal jurisdiction. Because the Court concludes that it lacks personal jurisdiction over Defendants, the Court need not address Defendants' remaining arguments for dismissal under Rule 12(b)(6) for failure to state a claim.[7] Further, in light of the Court's conclusion, Defendants' Motion to Amend will be denied as moot.

For the reasons stated herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendant Sanxin International Ltd.'s Motion to Dismiss First Amended Complaint (ECF No. 15) is GRANTED, based on lack of personal jurisdiction and the claims against Defendant, SI, are DISMISSED WITHOUT PREJUDICE.

---

[6] Plaintiff appears to advance an argument that Rodriguez is subject to this Court's jurisdiction as a result of a tort committed in North Carolina. (ECF No. 19 at 13–15.) While the cases cited by Plaintiff support the general proposition that commission of a tort in the forum state may subject a party to personal jurisdiction, Plaintiff fails to identify any specific act on the part of Rodriguez that allegedly constitutes a tort. The Court, therefore, finds this argument unpersuasive.

[7] *See Hutton v. Hydra-Tech, Inc.*, 213 F. Supp. 3d 746, 757 (M.D.N.C. 2016) (stating that, where defendants filed a motion to dismiss based on lack of personal jurisdiction and failure to state a claim, the court need not address defendants' arguments for dismissal for failure to state a claim because the court concludes that it does not have personal jurisdiction over defendants); *Provident Pharm., Inc. v. Amneal Pharms., LLC*, No. 3:08-CV-393, 2008 WL 4911232, at *5 (E.D. Va. Nov. 13, 2008) (same).

IT IS FURTHER ORDERED that Defendant Carlos E. Rodriguez's Motion to Dismiss First Amended Complaint (ECF No. 17) is GRANTED, based on lack of personal jurisdiction and the claims against Defendant, Rodriguez, are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants SI and Rodriguez's Motion to Amend Motions to Dismiss First Amended Complaint Due to Change in Patent Venue Law (ECF No. 22), is DENIED AS MOOT.

This, the 18th day of August, 2017.

/s/ Loretta C. Biggs
United States District Judge